**SO ORDERED.**

**SIGNED this 8th day of November, 2019.**



_Lena Mansori James_
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Gregory Bowman Hunter, Sr. | ) | Case No. 18-51081 |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| Todd O'Gara and | ) | |
| Wanu Water, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | Ad. Proc. No. 18-6036 |
| | ) | |
| v. | ) | |
| | ) | |
| Greg Hunter, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

**MEMORANDUM OPINION AND ORDER**

This adversary proceeding comes before the Court upon Greg Hunter's motion to dismiss under Federal Rule of Bankruptcy Procedure 7012. After consideration of the record and for the reasons stated herein, the Court will dismiss the adversary complaint with leave to amend.

BACKGROUND

Plaintiff Wanu Water, Inc.[1] ("Wanu"), founded in 2010 by Plaintiff Todd O'Gara ("O'Gara"), creates and sells nutrient-infused water that is formulated for health-conscious consumers (Docket No. 1, ¶ 10). In 2013, Wanu appointed Defendant Greg Hunter ("Hunter") to its board of directors, but he was removed from the board in September 2016, prior to the end of his term (Docket No. 1, ¶¶ 14, 17). Notwithstanding, Wanu granted Hunter the stock shares he would have been entitled to had he remained on the board through his term (Docket No. 1, ¶ 17).

Plaintiffs allege that approximately two years later, during a seven–week period in August and September 2018, Hunter launched a campaign with certain other stockholders to discredit O'Gara with an intent to injure both O'Gara and Wanu by driving down the value of the equity (Docket No. 1, ¶ 31). Hunter sent a series of harassing, passive-aggressive emails to former and current Wanu board members, stockholders, and investors. Many of these emails raised allegations concerning O'Gara's educational background or contained questions pertaining to wrongdoing, as well as questions about the governance of Wanu and various voting agreements (Docket No. 1, ¶¶ 35–81).

On September 28, 2018, Plaintiffs filed a six–count civil action against Hunter in the United States District Court for the Middle District of North Carolina (Case No. 1:18-cv-00825, the "District Court Complaint"), asserting claims for tortious interference with business relations, tortious interference with contract, negligent misrepresentation, violation of unfair competition laws, libel, and civil conspiracy (Docket No. 1, Ex. A). On October 17, 2018, Hunter filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Plaintiffs filed this adversary proceeding on December 11, 2018, objecting to the discharge of the claims brought in

---

[1] Wanu Water, Inc. was formerly called FLUROwater, Inc. until it changed its name in 2015.

the District Court Complaint under 11 U.S.C. § 523(a)(6). The next day, Plaintiffs filed a motion

for withdrawal of reference; the District Court denied that motion by order dated April 30, 2019.

Hunter now seeks dismissal of the § 523(a)(6) complaint under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, incorporated by reference in Federal Rule of Bankruptcy Procedure

7012.

STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint if

it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In

evaluating a motion to dismiss, a court must "test the sufficiency of the complaint to see if it

alleges a claim for which relief can be granted." *Dolgaleva v. Va. Beach City Pub. Sch.,* 364 F.

App'x 820, 825 (4th Cir. 2010). A motion under Rule 12(b)(6) should be granted if the

complaint does not allege "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Accordingly, the factual allegations must

"be enough to raise a right to relief above the speculative level" and advance the plaintiff's claim

"across the line from conceivable to plausible." *Id.* at 555, 570. As explained in *Ashcroft v. Iqbal,*

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged. The plausibility standard is not akin to probability
> requirement, but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility and plausibility
> of entitlement to relief.

556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

To determine plausibility, all well-pleaded facts set forth in the complaint are taken as

true and viewed in a light most favorable to the plaintiff; however, "legal conclusions, elements

of a cause of action, and bare assertions devoid of further factual enhancement" will not

constitute well-pleaded facts necessary to withstand a motion to dismiss. *Nemet Chevrolet, Ltd.*

*v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Assuming the complaint meets the plausibility standard, the plaintiff is not required "to also rebut other possible explanations for the conduct alleged." 2 MOORE'S FEDERAL PRACTICE § 12.34(1)(b) (2019). *See Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 484 (4th Cir. 2015) (holding that "a plaintiff need not demonstrate … that alternative explanations are less likely" to survive a motion to dismiss) (quoting <u>Twombly</u>, 550 U.S. at 570)). On the other hand, dismissal is proper under Rule 12(b)(6) "if the complaint lacks an allegation regarding an element necessary to obtain relief." 2 MOORE'S FEDERAL PRACTICE § 12.34(4)(a) (2019). *See Va. Citizens Def. League v. Couric,* 910 F.3d 780, 783–86 (4th Cir. 2018) (finding dismissal under Rule 12(b)(6) proper where plaintiff did not plausibly allege required elements of defamation claim).

In evaluating a Rule 12(b)(6) motion to dismiss, the Court "evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (holding a court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."). As with the complaint itself, the Court construes the facts in attached exhibits in a light most favorable to Plaintiffs. *Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 202 (4th Cir. 2001). In evaluating Hunter's motion to dismiss, the Court will consider not only the complaint asserting

nondischargeability of the debt owed to Plaintiffs under § 523(a)(6), but also Plaintiffs'

underlying District Court Complaint and other attached Exhibits.

In support of the motion to dismiss, and the objection to that motion, Hunter and

Plaintiffs each filed requests for judicial notice. Hunter requests this Court take notice of three

documents filed in *O'Gara v. Binkley*, 384 F. Supp. 3d 674 (N.D. Tex. 2019), a case brought by

the same Plaintiffs, raising the same causes of actions, against an alleged co-conspirator of

Hunter, Joseph Binkley (Docket No. 48). Specifically, Hunter requests this Court take judicial

notice of (1) the memorandum opinion and order granting defendant's motion to dismiss, (2) the

order of dismissal, and (3) the final judgment entered in that case. In their reply (Docket No. 50),

Plaintiffs did not object to Hunter's request, but instead made an additional request that the Court

take judicial notice of Plaintiffs' amended complaint against a third alleged member of the

conspiracy, Sheldon Coleman. *O'Gara v. Coleman*, No. 2018-0708 (Del. Ch. Apr. 26, 2019).

While "[o]rdinarily, a court may not consider any documents that are outside of the

complaint, or not expressly incorporated therein, on a motion to dismiss[,]" a narrow exception

provides that courts may take judicial notice of "relevant facts obtained from the public record"

without converting the motion into one for summary judgment, provided these facts "are

construed in the light most favorable to the plaintiff along with the well-pleaded allegations of

the complaint." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013),

*abrogated on other grounds by Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). In particular,

federal courts may take notice of proceedings in other courts "if those proceedings have a direct

relation to matters at issue." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)

(citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)); *see also*

*Pena v. HSBC Bank USA, Nat. Ass'n*, 633 F. App'x 580 (4th Cir. 2015) (taking judicial notice of foreclosure proceedings on a Rule 12(b)(6) motion).

While Federal Rule of Evidence 201 allows a court to take judicial notice of a document filed in another court "to establish the fact of such litigation, courts cannot take judicial notice of the factual findings of another court." *S. Bank & Trust Co. v. Alexander (In re Alexander)*, 524 B.R. 82, 88 (E.D. Va. 2014) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998)). Courts may only judicially notice a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, the Court will take judicial notice of the filings cited by Hunter and Plaintiffs "for the limited purpose of establishing the judicial acts themselves." *Alexander*, 524 B.R. at 89; *see also Absolute Activist Value Master Fund, Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1318 (M.D. Fla. 2017) (taking judicial notice of the existence of the complaint, stay, and corporate disclosure statement filed in Southern District of New York case, "but not for the truth of the matters asserted therein."). While Plaintiffs' allegations described within the *Binkley* and *Coleman* filings overlap in many instances with those at issue in this proceeding, Hunter was not a party to those cases, and the accusations against Hunter do not entirely mirror those levied against Binkley and Coleman. The Court takes notice of the filing of the memorandum and order of dismissal in *Binkley*, and complaint in *Coleman*, as well as the dates and parties in those documents, but declines to take judicial notice of factual and legal conclusions of the *Binkley* court, which, in any event, are not binding upon this Court, or the truth of the factual assertions put forth in the *Coleman* complaint. *Id.*

DISCUSSION

Under 11 U.S.C. § 523(a)(6), debtors may not discharge "any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity." Section 101 of the Bankruptcy Code defines "debt" as liability on a claim and "claim" as a right to payment of any nature. A basic principle of federal bankruptcy law is "that state law governs the substance of claims." *Summitbridge Nat'l Invs. III, LLC v. Faison*, 915 F.3d 288, 296 (4th Cir. 2019). Therefore, before reaching the question of whether Hunter may discharge the alleged debts owed to Plaintiffs, the Court must first determine whether Plaintiffs have valid claims against Hunter.

Plaintiffs' claims[2] are based on certain unliquidated state–law causes of action against Hunter which are currently pending in a case before the District Court for the Middle District of North Carolina (Docket No. 1 at Ex. A). Plaintiffs assert that Hunter caused injury by tortiously interfering with O'Gara's business relations, tortiously interfering with O'Gara's contracts, libeling O'Gara and Wanu, conspiring with other stockholders to injure O'Gara and Wanu, and by violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.[3] Hunter filed his bankruptcy case nineteen days after Plaintiffs filed the District Court Complaint, which remains stayed at the initial pleading stage. *See O'Gara v. Hunter*, No. 1:18-cv-00825 (M.D.N.C. Dec. 3, 2018) (Docket No. 8). Because Plaintiffs' claims in the District Court Complaint are in stasis and have not been fully litigated or liquidated, this Court's task in

---

[2] Both O'Gara and Wanu filed proofs of claims in the underlying bankruptcy case for amounts to be determined at trial (Claim Nos. 17-1, 18-1).

[3] Plaintiffs included an allegation of negligent misrepresentation in the District Court Complaint (Docket No. 1, Ex. A., ¶¶ 101–05), but declined to include that cause of action in their § 523(a)(6) nondischargeability complaint, presumably because negligence does not satisfy the heightened *Geiger* standard for a willful and malicious injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998); *TKC Aerospace Inc. v. Muhs* (*In re Muhs*), 923 F.3d 377, 386 (4th Cir. 2019).

adjudicating Hunter's motion to dismiss Plaintiffs' nondischargeability complaint requires a multistep analytical process.

First, the Court will address Hunter's assertion that any plausible claims Plaintiffs put forth in the District Court Complaint, even if well–pleaded, would not survive the special motion to strike codified in California's anti-SLAPP statute (strategic lawsuit against public participation) (Docket No. 37, p. 21). If Plaintiffs' claims impinged on Hunter's exercise of First Amendment rights, *see Wong v. Jing*, 117 Cal. Rptr. 3d 747, 759 (Cal. Ct. App. 2010), and are thus vulnerable to the anti-SLAPP special motion to strike, the claims would be dismissed.

If Hunter fails to demonstrate the applicability of the anti-SLAPP statute to the Plaintiffs' claims, the Court must then consider whether Plaintiffs plausibly pleaded a claim, or injury, that would result in debt owed to Plaintiffs by Hunter. Determining whether a debt falls under the § 523(a)(6) exception requires "careful consideration of the nature of the injury suffered by the creditor[.]" *KMK Factoring, L.L.C. v. McKnew (In re McKnew)*, 270 B.R. 593, 639 (Bankr. E.D. Va. 2001). Although not defined in the Bankruptcy Code, "the word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person." *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir. 1997), *aff'd*, 523 U.S. 57 (1998); *see also First Weber Group, Inc. v. Horsfall (In re Horsfall)*, 738 F.3d 767, 774 (7th Cir. 2013) (finding injury to mean "a violation of another's legal right, for which the law provides a remedy.").[4] Because the debts Plaintiffs assert as nondischargeable stem from claims that have not yet been litigated or reduced to judgment, this Court must determine whether Plaintiffs plausibly pleaded these claims

---

[4] This understanding of "injury" is supported by definitions in use at the time Congress enacted § 523(a)(6). *See, e.g.*, BLACK'S LAW DICTIONARY 923 (Rev. 4th ed. 1968) (defining injury as "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property."); WEBSTER'S THIRD NEW INT'L DICTIONARY 1164 (1976) (defining injury as "a violation of another's rights for which the law allows an action.").

under California law,[5] which would then allow those claims to constitute a debt subject to the dischargeability exception of § 523(a)(6).

Third, assuming Plaintiffs successfully pleaded an injury under state law that could result in a debt owed Plaintiffs by Hunter, the Court must then determine whether Plaintiffs plausibly pleaded the injury was willful and malicious and thereby within the dischargeability exception of § 523(a)(6). *See Kawaauhau v. Geiger*, 523 U.S. 57 (1998); *TKC Aerospace Inc. v. Muhs (In re Muhs)*, 923 F.3d 377 (4th Cir. 2019).

With these standards in mind, the Court will consider the adequacy of Plaintiffs' pleadings through three sequential steps: (1) whether Plaintiffs' underlying state-law claims would survive an anti-SLAPP motion under California Civil Code § 425.16, (2) whether Plaintiffs have pleaded an underlying injury, by way of well-pleaded causes of action under California law, and, if so, (3) whether Plaintiffs plausibly pleaded the state–law injury was willful and malicious and therefore, a claim upon which relief can be granted under § 523(a)(6).

1.    Viability of a California Anti-SLAPP Motion to Strike

Before addressing whether Plaintiffs adequately pleaded causes of action under California law, the Court first addresses Hunter's assertion that any such analysis is unnecessary because any plausible claims Plaintiffs put forth in the District Court Complaint "would be properly stricken" under California's anti-SLAPP statute (Docket No. 36, p. 21). This statute, California Civil Code § 425.16, "is called the anti-SLAPP statute because it allows a defendant to gain early dismissal of causes of action that are designed primarily to chill the exercise of First

---

[5] A federal court sitting in diversity applies the choice-of-law rules of the forum state, *see DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013), and North Carolina courts apply the law of the state where the plaintiff suffered his injury. *Boudreau v. Baughman*, 322 N.C. 331, 335 (1988); *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 692 (2010); *Graciano v. Blue Sky Logistics, LLC*, No 1:17CV889, 2019 WL 4393381, at *1 (M.D.N.C. Sept. 13, 2019). Plaintiffs sustained their alleged injuries in California and, therefore, the Court applies California law in assessing the sufficiency of Plaintiffs' state-law pleadings.

Amendment rights." *Wong v. Jing*, 117 Cal. Rptr. 3d 747, 759 (Cal. Ct. App. 2010). The Court analyzes Hunter's statements through the lens of the anti-SLAPP statute, not to strike Plaintiffs' nondischargeability complaint directly, but rather to assess whether Plaintiffs have, within the District Court Complaint, well-pleaded causes of action that could survive an anti-SLAPP motion and thereby constitute an injury subject to the dischargeability exception of § 523(a)(6). While there is a broader question as to whether anti-SLAPP statutes apply in federal courts, which is unanswered to date by the Fourth Circuit,[6] the Court finds it unnecessary to address this question because, as explained below, Hunter fails to make a threshold showing that the challenged activity forming the basis of Plaintiffs' complaint is covered by the California anti-SLAPP statute. *See Equilon Enter., LLC v. Consumer Cause, Inc.*, 52 P.3d 685, 694 (Cal. 2002) (finding a defendant invoking the anti-SLAPP statute must first make a "threshold showing that the challenged cause of action is one arising from protected activity.")

In the memorandum in support of the motion to dismiss, Hunter matter-of-factly concludes Plaintiffs' District Court Complaint "clearly targets Hunter's exercise of free speech concerning governance matters as well as educational background and qualification representations made by O'Gara in both investor materials and in publicly available online marketing campaigns" (Docket No. 37, p. 22). Protected acts under California Civil Code § 425.16 fall into four, non-exclusive categories:

---

[6] There is a split of authority as to whether the California anti-SLAPP statute, or anti-SLAPP statutes generally, apply in federal court. While two circuits have found state anti-SLAPP statutes apply in federal courts, *Godin v. Schencks*, 629 F.3d 79, 81, 92 (1st Cir. 2010), *United States ex. rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999), at least one circuit has held to the contrary. *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1336 (D.C. Cir. 2015). While the Fourth Circuit has not spoken on the issue, at least two district courts from within the circuit have found other anti-SLAPP statutes to be procedural, and thus not applicable in federal court. *See Platinum Press, Inc. v. Douros-Hawk*, No. 3:18-cv-00458, 2018 WL 6435331, at *3 (W.D.N.C. Dec. 7, 2018) (finding the Texas anti-SLAPP statute non-applicable in federal court); *ABLV Bank v. Ctr. for Advanced Def. Studies, Inc.*, No. 1:14-cv-1118, 2015 WL 12517012, at *3 (E.D. Va. Apr. 21, 2015) (finding the District of Columbia anti-SLAPP statute to be procedural and non-applicable in federal court.).

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Code § 425.16(e).

Hunter did not make his statements before, or in connection with an issue under consideration by, a legislative, executive, or judicial body or other official proceeding. Therefore, neither the first nor second categories are applicable. Hunter's statements, made in emails directed to the Wanu board of directors and certain investors[7] and stockholders (Docket No. 1, Ex. A., ¶¶ 32, 47, 55, 59), were restricted to a limited number of recipients, were not made in a place open to the public or a public forum, and are thus not covered by the third criterion of California Civil Code § 425.16(e). *See Kettler v. Gould*, 231 Cal. Rptr. 3d 580, 590 (Cal. Ct. App. 2018). As to the fourth category listed in Cal. Civ. Code § 425.16(e), Hunter also fails to make a threshold showing. A statement is a public issue if (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye, (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants, or (3) the statement or activity precipitating the claim involved a topic of widespread public interest. *Robinson v Alameda Cnty.*, 875 F. Supp. 2d 1029, 1049 (N.D. Cal. 2012) (citing *Commonwealth Energy Corp. v. Investor Data Exch., Inc.*, 1 Cal. Rptr. 3d 390, 394 (Cal. Ct. App. 2003)). Although defendants "virtually always …. succeed in drawing a line — however tenuous — connecting their speech to an abstract issue of public interest," the

---

[7] Plaintiffs submit that Hunter emailed John "Spike" Tickle, who is "not an investor" (Docket No. 1, ¶ 62). The email, however, which is attached to the District Court Complaint as Ex. O, reveals Hunter was uncertain as to whether Tickle invested in Wanu.

catchall provision of (e)(4) demands "some degree of closeness" between the challenged statements and the asserted public interest. *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1165 (Cal. 2019).

Hunter does not demonstrate how his statements on O'Gara's management decisions, including the impact of any alleged education and qualification misrepresentations on the business, are an issue of public interest. While several courts have held that "the conduct of a publicly traded corporation, including the legitimacy of corporate actions," may constitute a public interest covered by the (e)(4) catchall provision, *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1153 (C.D. Cal. 2005), Hunter's statements regarding O'Gara are not analogous. One clear distinction is the disparity in scale between Wanu, which is "small," "not public," and "not widely traded" (Docket No. 1, Ex. A., ¶ 34), and those companies whose corporate conduct was found by California courts to constitute a public interest. *See, e.g.*, *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 639 (Cal. Ct. App. 2001) (concerning a publicly traded company with as many as 24,000 outstanding shares.); *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1265 (C.D. Cal. 2001) (concerning a publicly traded company "with many thousands of investors."); *Troy Grp.*, 364 F. Supp. 2d at 1154 (concerning a publicly traded company with 10.6 million outstanding shares and at least 1,634 shareholders.).

Most importantly, the context in which Hunter made his statements, and to whom he directed those statements, indicates there is no "functional relationship" between the statements and any issue of public interest. *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1165 (Cal. 2019). In *FilmOn*, the California Supreme Court rejected the Defendants' argument that the reports at issue truly concerned a matter of public interest:

> DoubleVerify issues its reports not to the wider public — who may well be interested in whether FilmOn hosts content unsuitable for children or whether its streaming platform

> infringes copyright — but privately, to a coterie of paying clients. Those clients, in turn, use the information DoubleVerify provides for business purposes alone. The information never entered the public sphere, and the parties never intended it to.

*Id.* at 1167. Hunter's critiques of O'Gara, the founder and President of a small, privately held startup, through emails directed to current and former board members and stockholders, "never entered the public sphere" and were utilized purely for business purposes. *Id.* The management of Wanu is itself not a matter of widespread concern and was of interest to only a limited number of people, namely the small cadre of stockholders and investors. *See, e.g.*, *Olaes v. Nationwide Mutual Ins. Co.*, 38 Cal. Rptr. 3d 467, 474 (Cal. Ct. App. 2006); *Commonwealth Energy Corp. v. Investor Data Exch.*, *Inc.*, 1 Cal. Rptr. 3d 390, 395 (Cal. Ct. App. 2003). Accordingly, Hunter's statements were not made in connection with an issue of public interest and Hunter is unlikely to make the threshold showing required by California Civil Code § 425.16.

Because any attempt by Hunter to strike Plaintiffs' complaint under the California anti-SLAPP statute is unlikely to succeed, the Court turns to addressing whether Plaintiffs have plausibly pleaded an underlying injury under § 523(a)(6), by way of well–pleaded causes of action under California law. Plaintiffs point to five California–law claims, or injuries, as the basis for nondischargeable debt under § 523(a)(6)—libel, tortious interference with contract, tortious interference with prospective economic advantage, unlawful or unfair business practices, and conspiracy.

### 2.    Underlying Injury under § 523(a)(6)

#### a.    *Libel*

Plaintiffs O'Gara and Wanu bring libel claims against Hunter based on the allegedly defamatory statements made in the emails Hunter sent to directors and stockholders. As

previously described, these emails questioned O'Gara's educational background and qualifications and his management of Wanu (Docket No. 1, Ex. A., ¶¶ 32, 65–66).

The elements for libel claims under California law are governed by the provisions for defamation within California Civil Code § 45. Defamation is an invasion of the interest in reputation that may be libel or slander. 5 WITKIN, SUMMARY OF CAL. LAW TORTS § 623 (11th ed. 2019); *see also* RESTATEMENT (SECOND) OF TORTS § 558 (1977). Libel consists of "the more permanent forms of defamatory meaning," 5 WITKIN, SUMMARY OF CAL. LAW TORTS, *supra*, at § 624, and includes any "publication by writing, printing, picture, effigy, or other fixed representation to the eye." Cal. Civ. Code § 45. Under California Civil Code § 45, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 117 Cal. Rptr. 3d 747, 761 (Cal. Ct. App. 2010). A publication is communication of the allegedly defamatory statements "to a third person who understands its defamatory meaning as applied to the plaintiff." *Shively v. Bozanich*, 80 P.3d 676, 683 (Cal. 2003). Publication "does not require dissemination to a substantial number of individuals; it suffices that the defamatory matter is communicated to a single individual other than the one defamed." *Lundquist v. Reusser*, 875 P.2d 1279, 1284 (Cal. 1994) (internal citation omitted); *see also Maaskant v. Peck (In re Peck)*, 295 B.R. 353, 361 (9th Cir. B.A.P. 2003).

Recovery for defamation under California law "may be had only for false statements of fact." *Chaquico v. Freiberg*, No. 17-cv-02423-MEJ, 2018 U.S. Dist. LEXIS 139280, at *7 (N.D. Cal. Aug. 16, 2018); *see also Bently Reserve L.P. v. Papaliolios*, 160 Cal. Rptr. 3d 423, 429 (Cal. Ct. App. 2013). While it is "not necessary that anyone believe [the defamatory statement] to be true," *Arno v. Stewart*, 54 Cal. Rptr. 392, 397 (Cal. Ct. App. 1966), the statement must be alleged

to be *false.* One immediate shortcoming of Plaintiffs' complaint is the absence of any allegations that Hunter's statements regarding O'Gara's educational credentials are actually false. The emails of Hunter and his alleged co-conspirators, Jay Binkley and Sheldon Coleman, question whether O'Gara actually had the "educational credentials" he claimed, namely the medical degrees he claimed to possess (Docket No. 1, Ex. A., ¶¶ 28, 32, 33, 46). Plaintiffs' complaint fails to allege that the statements questioning O'Gara's receipt of professional degrees are actually false, instead alleging the co-conspirators' statements were based on a "report [that] falsely suggested that O'Gara did not attend institutions that he in fact attended" (Docket No. 1, Ex. A., ¶ 44). Plaintiffs, however, never actually allege O'Gara received the degrees questioned by Hunter. Because the emails and statements were chiefly concerned with whether O'Gara had the education credentials he claimed, i.e. medical degrees, and because Plaintiffs do not allege such statements to be false or positively affirm O'Gara's receipt of those degrees, Hunter's statements are not fairly susceptible to a false meaning. *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1120 (C.D. Cal. 1998). Accordingly, Plaintiffs did not sufficiently plead a claim for defamation based on Hunter's statements related to O'Gara's lack of educational credentials.

As to the statements related to O'Gara's alleged mismanagement of Wanu, O'Gara and Wanu bring separate libel claims against Hunter based upon the same statements. A corporation such as Wanu "may be defamed by matter that has a tendency to injure its business reputation, as by deterring persons from dealing with it." 5 WITKIN, SUMMARY OF CAL. LAW *TORTS* § 626 (11th ed. 2019) (citing *Vegod Corp. v. Am. Broad. Cos., Inc.*, 603 P.2d 14, 18–19 (Cal. 1979)). In certain circumstances, a corporation can bring an action for defamation for statements made about a corporate officer, *see Steep Hill Labs., Inc. v. Moore*, No 18-cv-00373-LB, 2018 WL 1242182, at **8–9 (N.D. Cal. Mar. 8, 2018) (collecting cases), but only if those statements can

15

reasonably be interpreted as commenting on "the way that officer performs his or her duties and responsibilities as an officer of the corporation, so as to have a natural tendency to affect the corporation disadvantageously in its business." *Palm Springs Tennis Club v. Rangel*, 86 Cal. Rptr. 2d 73, 77 (Cal. Ct. App. 1999). Hunter's allegedly defamatory statements about O'Gara's management of Wanu directly relate to the business of the corporation and the manner in which O'Gara performed his duties as founder and President. Accordingly, Wanu could bring its defamation claim based on Hunter's statements about O'Gara's management and, therefore, the Court will consider the defamation claims of Wanu and O'Gara jointly.

Hunter asserts that his allegedly defamatory emails do not contain false statements of fact, but are merely "questions and requests for clarification" regarding "allegations" raised by other parties (Docket No. 37, pp. 10–11). In response, Plaintiffs argue Hunter's statements are defamatory by "implying" that O'Gara is dishonest or disreputable in his management of Wanu (Docket No. 39, pp. 7–8). California law recognizes that a defamatory statement can be expressly stated or implied. *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010). "If the statement juxtaposes a series of facts so as to imply a defamatory connection between them, or otherwise creates a defamatory implication, he may be held responsible for the defamatory implication, even though the particular facts are correct." *Id.* The published statement, however, must "reasonably be understood as implying the alleged defamatory content." *Id.* "The critical question is not whether a statement is fact or opinion, but whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *GetFugu, Inc. v. Patton Boggs, LLP*, 162 Cal. Rptr. 3d 831, 842 (Cal. Ct. App. 2013) (internal citation omitted); *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993) (finding a question can be defamatory if it can "be reasonably read as an assertion of a false

fact.") The question presented to this Court is whether Plaintiffs have alleged plausible facts to show Hunter's statements imply a provably false assertion of fact.

To decide whether a statement expresses or implies a false assertion of fact, courts use a totality of the circumstances test, considering both the language of the statement and the context in which it is made. *Bently Reserve LP v. Papaliolios*, 160 Cal. Rptr. 3d 423, 429 (Cal. Ct. App. 2013). This contextual analysis also requires court analysis of "the knowledge and understanding of the audience targeted by the publication." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 40 (Cal. Ct. App. 2007). If the statements are not "reasonably susceptible of a defamatory meaning and cannot be reasonably understood in the defamatory sense pleaded," a dismissal is proper. *Baker v. L.A. Herald Exam'r*, 721 P.2d 87, 91 (Cal. 1986). The Court "must place itself in the position of the hearer or reader," *id.* at 90, specifically the board members, stockholders, and investors who were the recipients of Hunter's statements, to consider whether those statements are reasonably susceptible of a defamatory meaning, bearing in mind the intimate knowledge and understanding of Wanu possessed by those recipients.

Several of Hunter's statements appear to reference underlying facts and information that Hunter relies upon in making his assertions. For instance, in the list of questions attached to several of his emails, Hunter includes the following questions:

> Has the expense account abuse been curtailed?
> Have certain executive salaries been brought in line with what is appropriate for a company of this size and stage?
> Are the financials being audited regularly by a reputable auditor?
> What accounts have been lost and why?
> Is there an overall strategic plan? Any business plan of any type?
> Are ALL decisions being made in the best interests of ALL shareholders at ALL times?

(Docket No. 1, Ex. A., p. 122). These questions imply Hunter's possession of certain facts, namely, that there exists or existed at one time, expense account abuse, uncontrolled executive pay, inaccurate or missing financial audits, lost accounts, and executive mismanagement. Several

of Hunter's emails are framed in the same manner, with allusions to possible evidence of O'Gara's mismanagement of Wanu. In a September 5, 2018 email under the subject heading "Wanu updates and a WARNING," Hunter informs investors and stockholders "that there is a considerable amount of effort being expended to address potential alleged misuse of shareholder capital (nearly $1.4M last year), abuse of governance matters and fraudulent issuance of shares" (Docket No. 1, Ex. A., p. 117). While Hunter couches this email by saying "we hope [these charges] aren't true," the statement implies Hunter possesses information that these allegations are viable or at least worthy of an existing internal investigation.

An opinion, or in this case pointed questions or purported updates, can be actionable if "based on implied, undisclosed facts" where "the speaker has no factual basis for the opinion." *Ruiz v. Harbor View Cmty. Assn.*, 37 Cal. Rptr. 3d 133, 144 (Cal. Ct. App. 2005). In contrast, statements would not be actionable if the speaker "discloses all the statements of fact on which the opinion is based and those statements are true." *Id.* Even if the speaker discloses the facts on which he bases his statement, "if those facts are inaccurate or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact … [s]imply couching such statements in terms of opinion does not dispel these implications." *Terry v. Davis Cmty. Church*, 33 Cal Rptr. 3d 145, 158 (Cal. Ct. App. 2005). *Compare Piping Rock Partners, Inc. v. David Lerner Assocs.*, 946 F. Supp. 2d 957, 972 (N.D. Cal. 2013) (finding online posting "is entirely premised on a series of verifiably false statements of [alleged] fact.") *with Franklin v. Dynamic Details, Inc.*, 10 Cal. Rptr. 3d 429, 431 (Cal. Ct. App. 2004) (finding certain statements non-defamatory where "the emails at issue disclosed the facts upon which the opinions were based … and a reader of the emails could view those Web sites [containing those facts] and was free to accept or reject [the] opinions.").

18

The scenario here parallels two cases in which courts found plaintiffs presented a prima facie defamation case based on non–disclosure of provably false facts. In *Mamou*, the Court reversed a trial court's order granting summary judgment, finding "the statements … — that Mamou lacked integrity, that he was unethical — could be found to convey an actual imputation of fact if they implied the speaker's possession of undisclosed supporting facts." *Mamou v. Trendwest Resorts, Inc.*, 81 Cal. Rptr. 3d 406, 440 (Cal. Ct. App. 2008).  In *Environment Furniture*, the court found emails describing the "the apparent copying" of furniture designs did not fully disclose the facts forming the basis of that opinion. *Env't Furniture, Inc. v. Bina*, No. CV 09-7978 PSG, 2010 WL 11549403, at * 7 (C.D. Cal. Aug. 10, 2010). Additionally, the court noted the email "mentions that Environment Furniture has conducted a review of the Bina Collection, but does not disclose any facts that were discovered during the review, which formed the basis for Environment Furniture's conclusion that Bina had copied its designs." *Id*. The court found, "based on the language of the email … that an average reader could conclude the email's contents were statements of fact." *Id*. at *8.

Hunter's pointed questions and updates regarding "effort[s]" to "address potential alleged misuse of shareholder capital … abuse of governance matters and fraudulent issuance of shares," (Docket No. 1, Ex. A., p. 117), could be reasonably read to mean Hunter possessed undisclosed facts supporting these statements. Plaintiffs allege Hunter's statements are defamatory because they implied factual assertions "that Hunter knew at the time [were] not true – [because] the Confidential Report [commissioned by Wanu] had discredited [them.]" (Docket No. 39, p. 10). As in *Environment Furniture*, an average investor or stockholder of Wanu could conclude Hunter's statements were based upon verifiable, undisclosed facts. This scenario is precisely what Plaintiff alleges transpired, as shown by a response to Hunter's September 5, 2018 email in

19

which Jered Snow, a Wanu investor, responded to Hunter stating "[t]his is very concerning. Is my money safe?" (Docket No. 1, Ex. A., p. 117). Based on the allegations within the District Court Complaint and the attachments, Plaintiffs have plausibly alleged implied defamation under California law.

Nevertheless, Hunter asserts Plaintiffs cannot satisfy the fourth element of a defamation claim — that the allegedly false, published statement is unprivileged. Specifically, Hunter argues his emailed statements are subject to the qualified common-interest privilege. Codified as California Civil Code § 47(c), the privilege protects "communications made in good faith on a subject in which the speaker and hearer shared an interest or duty." *Kashian v. Harriman*, 120 Cal. Rptr. 2d 576, 593 (Cal. Ct. App. 2002). At common law and as codified, the privilege applies "to a narrow range of private interests[,]" in which "the relationship between the parties was close, e.g., a family, business, or organizational interest; and the request for information must have been made in the course of the relationship." *Brown v. Kelly Broadcasting Co.*, 771 P.2d 406, 414 (Cal. 1989). Though the "scope of the privilege" is "not capable of precise or categorical definition," *Kashian*, 120 Cal. Rptr. 2d at 593–94, there are some commonalities for the situations in which the privilege is applied. While not exclusive, several courts describe the elements of California Civil Code § 47(c) as follows:

(1) The 'interest' applies to a defendant who is 'protecting his own pecuniary or proprietary interest.'
(2) The required 'relation' between the parties to the communication is a contractual, business or similar relationship, such as 'between partners, corporate officers and members of incorporated associations,' or between 'union members [and] union officers.'
(3) The 'request' referred to must have been in the course of a business or professional relationship.

*Kashian*, 120 Cal. Rptr. 2d at 593 (citing *Rancho La Costa, Inc. v. Superior Court*, 165 Cal. Rptr. 347, 359 (Cal. Ct. App. 1980)); *see also* 5 WITKIN, SUMMARY OF CAL. LAW TORTS § 699 (11th

ed. 2019) ("Communications between partners, corporate officers or directors, and members of unincorporated associations may be justified by the common interest of group."). If Hunter shows his statements are covered by the common-interest privilege, Plaintiffs' defamation claim will only survive upon a prima facie showing that Hunter's statements were made "with actual malice." *Taus v. Loftus*, 151 P.3d 1185, 1210 (Cal. 2007). "Actual malice" is established by "a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Id.* (citations omitted).

The recipients of Hunter's emailed statements were Wanu board of directors, certain investors, and stockholders (Docket No. 1, Ex. A., ¶¶ 32, 47, 55, 59). The published statements, discussing O'Gara's management of Wanu and the representations O'Gara made to potential investors, all concerned the common interest of Hunter and the recipients of his statements—the pecuniary welfare and direction of the company. *See, e.g.*, *Cuenca v. Safeway S.F. Emp. Fed. Credit Union*, 225 Cal. Rptr. 852, 996 (Cal. Ct. App. 1986) (finding publication, limited to members of supervisory committee and board of directors, concerned matters "directly relevant to plaintiff's fitness as manager," and were thus covered by the common-interest privilege); *Swaffield v. Universal Ecsco Corp.*, 76 Cal. Rptr. 680, 690 (Cal. Ct. App. 1969) (common-interest privilege applied where plaintiff brought suit over a letter written by defendant president to a board director concerning plaintiff's falsification of business records.). Hunter's statements concerning the business management of Wanu and the actions of its founder are covered by the common interest privilege, therefore the burden is on the Plaintiffs to plead these statements were made with actual malice.

If Plaintiffs sufficiently alleged actual malice, the defamation complaint could survive Hunter's invocation of the common–interest privilege. Establishing actual malice in defamation actions is a "demanding burden," *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014), but may be established either by direct proof of the defendant's state of mind, or by circumstantial evidence from which the jury might infer it as a fact. 5 WITKIN, SUMMARY OF CAL. LAW *TORTS* § 697 (11th ed. 2019). Plaintiffs must have alleged that Hunter's statements were "motivated by hatred or ill will" towards O'Gara or by alleging that Hunter "lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Taus v. Loftus*, 151 P.3d 1185, 1210 (Cal. 2007). Hatred or ill will, for the purposes of California Civil Code § 47(c), is shown through "a willingness to vex, annoy *or injure another person*." *Brown v. Kelly Broad. Co.*, 771 P.2d 406, 411 (Cal. 1989) (emphasis added). Plaintiffs may also overcome the privilege by showing Hunter knew the statements were false or had no reasonable ground to believe they were true, but "mere negligence in inquiring into facts, or blundering, is not enough to defeat the privilege." 5 WITKIN, SUMMARY OF CAL. LAW *TORTS* § 697 (11th ed. 2019) (citing *Bierbower v. FHP, Inc.*, 82 Cal. Rptr. 2d 393, 397 (Cal. Ct. App. 1999)).

Plaintiffs sufficiently pleaded actual malice for purposes California Civil Code § 47(c) in the District Court Complaint. Plaintiffs allege Hunter "either knew, or should have known that [his] allegations were false" based on his access to the internal, Wanu-produced confidential report regarding O'Gara's management, and therefore that Hunter issued his statements in "reckless[] and in knowing disregard for their truth" (Docket No. 1, Ex. A., ¶¶ 66, 82). The factual pattern described by Plaintiffs aligns in many ways with that of *Peterson v. Sanghi*, No.

8:18-cv-02000-JLS-ADS, 2019 WL 1715487 (C.D. Cal. Feb. 14, 2019). The court explained its rationale for finding plaintiffs' complaint sufficiently alleged actual malice:

> Plaintiffs claim that (1) they provided all the necessary information to Defendants, such that the statements asserting they did otherwise were knowingly false; and (2) the information disclosed showed that they did not engage in any of the improper behavior — such as 'channel stuffing' or 'executive extravagance' — referred to in the defamatory statements. Such allegations are more than sufficient to plead that Defendants did not have reasonable grounds for believing their statements to be true.

*Id.* at *8. Akin to *Peterson*, Plaintiffs here alleged that Hunter was in possession of information, in the form of the confidential report, that disproved the allegations he was making, thus showing Hunter had no reasonable grounds to believe the statements he was making or the scenarios to which he was alluding were true. *See also Cornell v. Berkeley Tennis Club*, 227 Cal. Rptr. 3d 286, 320 (Cal. Ct. App. 2017) (finding triable issue exists as to whether defendants "actually believed" that plaintiff planted a recording device and, if defendants did not, "then they acted with actual malice in stating that she planted the recorder."); *Mamou v. Trendwest Resorts, Inc.*, 81 Cal. Rptr. 3d 406, 411 (Cal. Ct. App. 2008) (identifying a triable issue of material fact as to actual malice based on "evidence from which a factfinder could reasonably infer that the authors of at least some of the defamatory statements knew they were false when made.").

Here, Plaintiffs have plausibly alleged that Hunter's statements, when viewed in context, are reasonably capable of a defamatory meaning or are substantially false. Although Hunter's statements are likely covered under the common-interest privilege, Plaintiffs have plausibly alleged facts that would show actual malice under California law and thereby overcome that privilege. Accordingly, Plaintiffs have sufficiently pleaded a cause of action for defamation under California law, thus constituting an underlying injury for purposes § 523(a)(6).

b.    *Tortious Interference with Contract*

Plaintiffs allege Hunter committed tortious interference with O'Gara's voting agreements by sending emails and placing phone calls intended to induce the signatory–stockholders to breach those agreements (Docket No. 1, Ex. A., ¶¶ 94–100). A cause of action for tortious interference with contract requires (1) a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage. *Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1202 (N.D. Cal. 2014); *Redfearn v. Trader Joe's Co.*, 230 Cal. Rptr. 3d 98, 104 (Cal. Ct. App. 2018). Unlike a claim for tortious interference with business relations, the tort of intentional interference with performance of a contract does not require that the defendant's conduct be wrongful by some legal measure other than the interference itself. *Quelimane Co., Inc., v. Stewart Title Guaranty Co.*, 960 P.2d 513, 530 (Cal. 1998). Under California law, this tort not only encompasses cases in which the defendant acts with the purpose of interfering with the contract or desiring such a result, but also includes instances in which the defendant "knows that the interference is certain or substantially certain to occur as a result of his action." *Id.*, *accord. Reeves v. Hanlon*, 95 P.3d 513, 517 (Cal. 2004).

Plaintiffs adequately plead the existence of approximately forty–five stockholder voting agreements between O'Gara and other Wanu stockholders, as well as Hunter's knowledge of those agreements (Docket No. 1, Ex. A., ¶¶ 16, 70). Plaintiffs have also alleged Hunter intentionally acted to induce a breach or, in any event, acted in manner where he knew interference was "certain or substantially certain to occur" as a result of his action (Docket No. 1,

Ex. A., ¶¶ 65–68, 78). Plaintiffs, however, fail to adequately plead the two remaining elements necessary under California law — actual breach or disruption of the contractual relationship and resulting damage. *See*, *e.g.*, *Moonracer, Inc. v. Collard*, No. 5:13-cv-455, 2015 WL 1275395, at *7 (E.D.N.C. Mar. 18, 2015) (dismissing claim for tortious interference with contract under California law where plaintiff came forward with no specific evidence of those damages); *Piping Rock Partners, Inc. v. David Lerner Assocs.*, 946 F. Supp. 2d 957, 979–80 (N.D. Cal. 2013) (striking counterclaim for tortious interference with contract where plaintiff offered no evidence the contract was breached or disrupted, but only "vague assertions that [defendant's] advice to [plaintiff's] customers must have been intended to get them to breach a contract."); *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Nos.*, No. CV 12-08968 DDP, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013) (finding plaintiff "has not alleged any facts identifying the particular contracts, the actual disruption of these contracts, or any actual damage to [the plaintiff].").

Plaintiffs allege only that O'Gara's contractual relationships "have and continue to be disrupted and interfered with by Hunter's aforementioned conduct" causing "damages in an amount to be proven at the time of trial" (Docket No. 1, Ex. A., ¶¶ 98–99). The District Court Complaint, however, does not include allegations that any of the voting agreements were actually breached or that O'Gara's voting powers were in any way negatively affected by Hunter's statements. If anything, the District Court Complaint demonstrates O'Gara's continued exercise of his voting power, through the stockholder voting agreements, as evidenced by the board's voted removal of three directors and designation of three replacements (Docket No. 1, Ex. A., ¶¶ 52–53). Nowhere within the District Court Complaint do Plaintiffs allege that any of the forty–five stockholders breached a voting agreement because of Hunter's conduct. Therefore,

Plaintiffs have not plausibly alleged a breach of a contractual relationship, and resulting damage, required to plead a cause of action for tortious interference of contract under California law. Consequently, there is no injury, and thus no resulting debt, that could be subject to nondischargeability under § 523(a)(6).

c.    <u>Tortious Interference with Prospective Economic Advantage</u>

Plaintiffs also allege that, through his emails to stockholders and board members, Hunter interfered with Plaintiffs' prospective economic advantage (Docket No. 1, Ex. A., ¶¶ 90–91).[8] Although Plaintiffs conflate many aspects of this claim with their claim for tortious interference with contract, the crux of this allegation is that Hunter's emails "caused Wanu stockholders, including important major stockholders, to question their investment in the Company and some have decided to not make any further investments at this time, which has adversely affected the Company's working capital position, and in turn adversely affected O'Gara's 32 percent share of Wanu" (Docket No. 1, Ex. A., ¶ 83).

Under California law, the following elements comprise a claim for tortious interference with prospective economic advantage: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003). To recover for damages under this tort, Plaintiffs must plead "the defendant's conduct was wrongful by some legal measure other than

---

[8] In the District Court Complaint, Plaintiffs describe this potential claim as one of "Tortious Interference with Business Relations." Plaintiffs' allegations, however, are more accurately described under California law as a potential claim for tortious interference with prospective economic advantage.

the fact of interference itself." *Id.* "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 954. Plaintiffs, however, are not required to plead Hunter specifically intended to interfere with the prospective investments, but merely that Hunter "knew that the interference was certain or substantially certain to occur as a result of [his] action." *Id.* at 951.

Plaintiffs' state–law cause of action for tortious interference with prospective economic advantage is fatally deficient on the first key element — demonstrating an economic relationship with a specific third party with the probability of future economic benefit. Plaintiffs "must establish an actual economic relationship or a protected expectancy with a third person, not merely a hope of future transactions." *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998). Plaintiffs must also allege "that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (Cal. 1987). Importantly, the party from whom the benefit is expected must "be identified in some manner." *PNY Techs., Inc. v. SanDisk Corp.*, No. C-11-04689 YGR, 2012 WL 1380271, at *14 (N.D. Cal. Apr. 20, 2012) (citing *Ramona Manor Convalescent Hosp. v. Care Enters.*, 225 Cal. Rptr. 120, 126 (Cal. Ct. App. 1986)). While not required to mention the affected third parties "by name," *see Ramona*, 225 Cal. Rptr. at 126, Plaintiffs must allege specific facts "from which the Court can discern the impacted relationships." *SanDisk*, 2012 WL 1380271, at *14. Without this, Plaintiffs fail to satisfy the first element of a cause of action for interference with prospective economic advantage. *See, e.g.*, *Capitol Comm'n, Inc. v. Capitol Ministries*, No. 5:11-cv-00214-BO, 2013 WL 5493013, at *4 (E.D.N.C. Oct. 1, 2013) (finding allegations that plaintiff interfered with every donor defendant had, or ever will have, does not sufficiently identify the third party with whom defendant had a relationship); *Rheumatology*

*Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2013 WL 5694452, at *21 (N.D. Cal. Oct. 18, 2013) (finding plaintiffs only include "vague allegations of relationships with patients and physicians, but do not say who the patients or physicians are.").

In the District Court Complaint, Plaintiffs allege that Hunter's emails "caused Wanu stockholders, including important stockholders, to question their investment in the Company and some have decided to not make any further investments at this time" (Docket No. 1, Ex. A., ¶ 83). Elsewhere, Plaintiffs allege Hunter's statements "caused prospective investors to forego making additional investments in Wanu" (Docket No. 1, Ex. A., ¶ 113). At no time do Plaintiffs provide facts that would allow the Court or Hunter to discern the relationships alleged to be disrupted. Plaintiffs' allegations of general interference with "some" stockholders and "prospective investors" are insufficient and "fail to allege an existing, concrete relationship with a specific and identifiable [third party] with" whom Hunter interfered. *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1123 (N.D. Cal. 2007). Plaintiffs also fail to allege that these unidentified stockholders or investors would have made additional investments in Wanu "but for the defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (Cal. 1987). While Plaintiffs state in one part of the District Court Complaint that Hunter's statements "caused prospective investors to forego making additional investments," in other places Plaintiffs allege Hunter's statements merely led stockholders "to question their investment" in Wanu, with only "some" deciding to forego additional investments "at this time" (Docket No. 1, Ex. A., ¶¶ 83, 113). Plaintiffs do not allege plausible facts that these investments were reasonably probable but for Hunter's statements. For these reasons, Plaintiffs fail to sufficiently plead the first element of a cause of action for tortious interference with prospective economic advantage. Accordingly,

there is no injury, and thus no resulting debt, that could be subject to nondischargeability under § 523(a)(6).

d.        *Unlawful or Unfair Business Practices*

The California Business & Professions Code §§ 17200*, et seq.* (collectively, the "Unfair Competition Law" or "UCL") (Docket No. 1, ¶ 115) "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). "Whether any particular conduct is a business practice within the meaning of §§ 17200 is a question of fact dependent on the circumstances of each case." *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1048 (C.D. Cal. 1998).

Plaintiffs allege Hunter's statements violate the UCL in two manners — as "unlawful" and/or "unfair" business practices. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043 (9th Cir. 2010) (describing the UCL as "establishing three varieties of unfair business practices[:]" unlawful, unfair, or fraudulent business practices.) "To plead a claim based on unlawful activity, a party must identify some other law and 'state with reasonable particularity the facts supporting the statutory elements' of the alleged violation." *LFG Nat'l Capital, LLC v. Gary, Williams, Finney, Lewis, Watson, and Sperando P.L.*, 874 F. Supp. 2d 108, 123 (N.D.N.Y. 2012) (applying California law). Unlawful activity under the UCL "covers a wide range of conduct" and "embraces anything that can properly be called a business practice and that at the same time is forbidden by law." *Korea Supply Co.*, 63 P.3d at 943. Plaintiffs must allege that Hunter engaged in a business practice "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court–made." *Shroyer*, 622 F.3d at 1044 (citing *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 441 (Cal. Ct. App. 1994)). A common law violation such

as breach of contract is insufficient. *Shroyer*, 622 F.3d at 1044 (citing *Allied Grape Growers v. Bronco Wine Co.*, 249 Cal. Rptr. 872, 882–84 (Cal. Ct. App. 1988)).

As discussed above, Plaintiffs plausibly pleaded a cause of action for defamation under California law. Plaintiffs' defamation claim would, if proven, be sufficient to support Plaintiffs' claim against Hunter for unlawful business activity. *See iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, No. C-11-0592 CW, 2011 WL 6291793, at *20 (N.D. Cal. Oct. 25, 2011) (enjoining defendants, under § 17200, from "publishing false, unsubstantiated, or misleading statements" about plaintiff and its goods and services); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1048 (C.D. Cal. 1998) ("Plaintiff sufficiently alleges that defendant's publication of defamatory and disparaging statements about the [Isuzu] Trooper with intent to deceive the public constitutes a business practice under § 17200."); *Hawran v. Hixson*, 147 Cal. Rptr. 3d 88, 106 (Cal. Ct. App. 2012) (finding plaintiff's "UCL claim is derivative of [his] defamation cause of action, that is, it is based on the same assertedly false and defamatory press release statements, and likewise that cause of action stands or falls with that underlying claim.").

While Plaintiffs can plead a cause of action under the UCL based upon the defamation claim, the range of available remedies is limited. A UCL action "is equitable in nature [and] damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). Prevailing private individuals are therefore "generally limited to injunctive relief and restitution[,]" with an order for restitution defined as one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property […]" *Id*. at 944. Simply put, under the UCL, "an individual may recover profits unfairly obtained

to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 947.

Plaintiffs seek to enjoin Hunter from "unlawfully contacting Wanu stockholders and current or former Board members and otherwise inducing or attempting to induce Wanu stockholders to breach the Voting agreements" (Docket No. 1, Ex. A., ¶ 109). Plaintiffs also state that O'Gara and Wanu "have been harmed reputationally and have lost money and property" and therefore "seek an order of restitution against Hunter" (Docket No. 1, Ex. A., ¶ 108). Nowhere in the District Court Complaint, however, do Plaintiffs plead facts showing Hunter obtained profits, monies, or other benefits from his allegedly defamatory statements and unfair business practices. As such, there are no funds subject to restitution, and Plaintiffs would presumably be limited to non–monetary equitable relief. While there is a question as to scope, and permissibility, of any injunction sought by Plaintiffs against Hunter,[9] the Court need not discuss that potential concern because, as described below, any relief available to Plaintiffs is not subject to the dischargeability exception under § 523(a)(6).

### e.   *Conspiracy*

Finally, Plaintiffs allege Hunter engaged in a civil conspiracy with Jay Binkley, Sheldon Coleman, and others to disparage O'Gara, remove him from the Wanu board of directors, and interfere with the voting agreements and prospective investments (Docket No. 1, Ex. A., ¶¶ 43,

---

[9] Due to concerns regarding prior restraints on free speech, any injunction that could issue against Hunter's speech would be limited to *specific* speech determined by a fact finder to be false. *See, e.g.*, *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1083 (C.D. Cal. 2003) (finding "allegations of falsity are insufficient to warrant prior restraint" through a preliminary injunction); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1049 (C.D. Cal. 1998) (dismissing plaintiff's claim under § 17200 with prejudice "to the extent it seeks relief beyond enjoining defendant from making specific statements determined to be unprotected by the First Amendment[.]"); *Kramer v. Thompson*, 947 F.2d 666, 676 (3d Cir. 1991) ("Once a jury has determined that a certain statement is libelous, it is not a prior restraint for the court to enjoin defendant from repeating that statement.").

115–20). Conspiracy under California law "is not a cause of action, but a legal doctrine that imposes liability on persons, who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 510–11 (1994). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Id.* at 511. Plaintiffs' conspiracy claim, therefore, is dependent upon the successful pleading of an actual tort elsewhere in the District Court Complaint. *See H&M Assocs. v. City of El Centro*, 167 Cal. Rptr. 392, 401 (Cal. Ct. App. 1980) ("Where the complaint alleges both a conspiracy and the commission of a wrongful act, the only significance of the former allegation is its rendering of each participant in the wrongful act liable as a joint tortfeasor, regardless of his degree of participation."). Because Plaintiffs plausibly pleaded defamation and unfair business practices under California law, the conspiracy claim is potentially viable.

The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to the plaintiff (3) from a wrongful act done in furtherance of the common design. *Rusheen v. Cohen*, 128 P.3d 713, 722 (Cal. 2006). Plaintiffs "must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To that end, Plaintiffs "must explain the role of each defendant in the conspiracy," as well as the basis and goal of the agreement and when it was made. *Pagtakhan v. Doe*, No. C 08-2188 SI, 2013 U.S. Dist. LEXIS 6115, at **3–4 (N.D. Cal. Jan. 15, 2013). However, when a cause of action for civil conspiracy to defame is pleaded, all that is required is that plaintiffs "sufficiently apprise[] defendants of the character and type of facts and circumstances upon which [they are] relying to establish the conspiracy." *Schessler v. Keck*, 271

P.2d 588, 592 (Cal. Ct. App. 1954) (finding the entirety of plaintiffs' complaint specifically pleads details "which elaborate on the mutual understanding arrived at by defendants.")

Plaintiffs have plausibly pleaded civil conspiracy in the District Court Complaint. While there is less explanatory material than what is found in the dischargeability complaint for this adversary proceeding,[10] the District Court Complaint sufficiently explains the genesis and goals of the conspiracy — to raise questions as to O'Gara's leadership and initiate his removal from the board of directors (Docket No. 1, Ex. A., ¶ 84). Plaintiffs also explained the role of each coconspirator. Coleman is alleged to have used his position on the board to allege a "loss of confidence" in O'Gara, as well as to share unauthorized, confidential Wanu information with Hunter and Binkley (Docket No. 1, Ex. A., ¶¶ 27, 45, 51, 54). Binkley is alleged to have initiated the improper outside investigation into O'Gara's background, designed to undermine confidence in O'Gara's leadership (Docket No. 1, Ex. A., ¶¶ 28, 43). Hunter, as described in detail above, is alleged to have sent "harassing emails" questioning O'Gara's leadership of the company and raising unsupported questions regarding corporate malfeasance and mismanagement on the part of O'Gara (Docket No. 1, Ex. A., ¶ 32–33, 66–68). Plaintiffs have "sufficiently apprised defendants of the character and type of facts and circumstances" upon which they are "relying to establish the conspiracy." *Schessler*, 271 P.2d at 592.

### 3.    Willful and Malicious Injury Under § 523(a)(6)

Because Plaintiffs have plausibly pleaded three claims for purposes of California law — libel, unlawful or unfair business practices, and conspiracy — in this third step, the Court must

---

[10] In filing this adversary complaint, Plaintiffs appear to have added several paragraphs, which were not within the District Court Complaint, that expound on the goal of the conspiracy and the objectives of the conspirators. These paragraphs allege that Hunter and his conspirators initiated the conspiracy to disparage O'Gara to ensure his removal from the board of directors, thereby driving down the market value of Wanu and allowing the conspirators to obtain Wanu shares at a discounted rate (Docket No. 1, ¶¶ 31, 86, 110).

test each of these three claims to determine whether Plaintiffs plausibly pleaded a willful and malicious injury that would bring any of these claims within the orbit of the § 523(a)(6) dischargeability exception. "Dischargeability is a matter of federal law, informed by, but in the main independent from the underlying state law claims." *Gray Layton Kersh Solomon Furr & Smith, P.A. v. Jacobs (In re Jacobs)*, 582 B.R. 654, 664 (Bankr. W.D.N.C. 2017) (citing *Grogan v. Garner*, 498 U.S. 279, 289 (1991)).

A § 523(a)(6) claim requires that the debtor's conduct causing the injury was "willful and malicious." This standard requires not only that the debtor's act was intentional, but that the debtor engaged in the conduct with an "intent to injure." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *TKC Aerospace Inc. v. Muhs (In re Muhs)*, 923 F.3d 377, 379 (4th Cir. 2019) (quoting *In re Duncan*, 448 F.3d 725, 730 (4th Cir. 2006)). Injury that is caused by reckless or negligent conduct does not fall under the scope of § 523(a)(6). *Geiger*, 523 U.S. at 64; *In re Muhs*, 923 F.3d at 386. In the years following *Geiger*, numerous bankruptcy courts have noted the heightened burden of proof plaintiff–creditors must meet to successfully prove nondischargeability under § 523(a)(6). *See, e.g.*, *Burris v. Burris (In re Burris)*, 598 B.R. 315, 334 (Bankr. W.D. Okla. 2019) (describing the standard as "stringent"); *Abraham v. Palmer (In re Palmer)*, 555 B.R. 611, 627–28 (Bankr. N.D. Ohio 2016) (describing the standard as "stringent" and "difficult"); *ColeMichael Invs., L.L.C. v. Burke (In re Burke)*, 405 B.R. 626, 652 Bankr. N.D. Ill. 2009) (describing the standard as "stringent"); *Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 339 (Bankr. N.D. Ind. 2006) (finding "the *Geiger* standard is extremely strict for creditors to meet.")

The Fourth Circuit has characterized the test for willful and malicious injury as "whether the debtor acted with 'substantial certainty [that] harm [would result] or a subjective motive to

34

cause harm.'" *Parsons v. Parks (In re Parks)*, 91 Fed. App'x 817, 819 (4th Cir. 2003) (quoting *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)). Determining whether a debtor willfully and maliciously caused injury "demands an analysis focused on the debtor's mental state as it relates to the consequences of an injurious act," which may not always align with the scienter required to prove the underlying state-law claim. *LeCann v. Cobham (In re Cobham)*, 551 B.R. 181, 192 (E.D.N.C. 2015), *aff'd* 669 Fed. Appx. 171 (4th Cir. Oct. 14, 2016). Accordingly, the Court must determine not only whether Plaintiffs adequately pleaded the required mental state for the underlying state–law claims they put forth in the District Court Complaint, but whether they have plausibly alleged that Hunter's actions were "willful" and "intended to injure" Plaintiffs.

a.    *Libel*

Having determined Plaintiffs plausibly pleaded a defamation cause of action under California law, the Court must consider whether Plaintiffs have alleged the defamation constitutes a willful and malicious injury under § 523(a)(6). While the Court has determined that Plaintiffs pleaded actual malice sufficient to overcome Hunter's invocation of the common-interest privilege, that finding does not necessarily equate to a finding of willful and malicious under § 523(a)(6). "Dischargeability is a question of federal law[,]" *Long v. West (In re Long)*, 794 F.2d 928, 930 (4th Cir. 1986), and the scienter needed to establish an underlying state–law claim may not match that required for a finding of nondischargeability under the Bankruptcy Code. This may be true even where, as is the case here, the state–law claim uses the same descriptive terminology, i.e. "willful" or "malice/malicious." *See, e.g.*, *LeCann v. Cobham (In re Cobham)*, 551 B.R. 181, 193 (E.D.N.C. 2015) (finding an award of punitive damages for "willful or wanton conduct" is insufficient to satisfy the willful and malicious standard under

§ 523(a)(6)); *Armstrong v. Oslin (In re Oslin)*, 584 B.R. 364, 369 (Bankr. N.D. Okla. 2018) ("A state court's finding of fraud or willful and malicious conduct under state law will not necessarily establish such elements in a bankruptcy non–dischargeability proceeding."); *Osborn v. Miller (In re Miller)*, No. 06-6028, 2010 WL 2490666, at **3, 5 (Bankr. D. Kan. June 16, 2010) (finding state-court judgment describing debtor's action as causing "willful and malicious injuries" did not preclude debtor from arguing his conduct was not willful and malicious under § 523(a)(6)); *Williams v. Adams (In re Adams)*, 349 B.R. 199, 203–04 (Bankr. W.D. Mo. 2006) (finding a state court judgment's "bare statement" that debtor's conduct was "willful, wanton, and malicious" does not establish that the injuries to the plaintiffs were "willful and malicious" for purposes of § 523(a)(6)).

Here, Plaintiffs plausibly pleaded actual malice under California law, but actual malice is a broader scienter requirement than that found in willful and malicious under § 523(a)(6). To demonstrate actual malice under California defamation law, a plaintiff must show defendant's (1) knowledge of the falsity of the statements, demonstrating "hatred or ill will" toward the plaintiff or (2) lack of "reasonable grounds for belief in the truth of the publication," thus demonstrating "*reckless* disregard of the plaintiff's rights." *Taus v. Loftus*, 151 P.3d 1185, 1210 (Cal. 2007) (emphasis added). In comparison, a debt arising from an injury attributable to "reckless conduct" does not satisfy the "willful and malicious" requirement of § 523(a)(6).

In the dischargeability complaint, Plaintiffs pleaded *both* forms of scienter sufficient to establish actual malice under California law. While positing that Hunter "sought retribution for his removal from the board [of directors of Wanu]" (Docket No. 1, ¶ 31), which could demonstrate an "intent to injure" under § 523(a)(6), Plaintiffs also allow for the possibility that Hunter may not have known his statements, or the undisclosed facts he alluded to through his

36

raised questions, were provably false. Plaintiffs allege Hunter, based on his access to the internal, Wanu-produced confidential report regarding O'Gara's management, "either knew, or should have known that [his] allegations were false," and therefore issued them "recklessly and in knowing disregard for their truth" (Docket No. 1, ¶¶ 69, 85).

In their objection to Hunter's motion to dismiss, Plaintiffs argue "reckless disregard for the truth is enough to show willful and malicious injury" (Docket No. 39, pp. 12–13). This assertion is at odds with Fourth Circuit guidance, and Plaintiffs do not point to binding caselaw suggesting otherwise. A "willful and malicious injury" for purposes of § 523(a)(6), requires not only that the debtor's act was intentional, but that the debtor engaged in the conduct with an "intent to injure." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *TKC Aerospace Inc. v. Muhs (In re Muhs)*, 923 F.3d 377, 379 (4th Cir. 2019) (quoting *In re Duncan*, 448 F.3d 725, 730 (4th Cir. 2006)). As the Supreme Court and the Fourth Circuit have emphasized, injury that is caused by *reckless* or negligent conduct does not fall under the scope of § 523(a)(6). *Geiger*, 523 U.S. at 64; *In re Muhs*, 923 F.3d at 386. Although Plaintiffs could successfully prosecute a state–law cause of action for defamation based on Hunter's lack of reasonable grounds for believing in the truth of his statements, such a scenario, in which Hunter would not need to intend any injury to O'Gara or Wanu, would not rise to the level of intent required by § 523(a)(6). Accordingly, while Plaintiffs' allegations that Hunter made his statements "recklessly" and "in knowing disregard for their truth" may be sufficient to obtain a judgment for defamation under California law, that mental state does not plausibly allege an intent to injure sufficient to render that judgment nondischargeable under § 523(a)(6).[11] For that reason, the dischargeability complaint

---

[11] In both the nondischargeability complaint and the District Court Complaint, Plaintiffs used identical language in pleading the same broader scienter used to demonstrate actual malice, which includes reckless disregard for the truth (Docket No. 1, ¶ 85; Docket No. 1, Ex. A., ¶ 82). Both at the June 18, 2019 hearing on Hunter's motion to dismiss, and in their filed objection to the motion, Plaintiffs argued that acting with reckless disregard for the truth constitutes

fails to allege sufficient facts that allow the Court to draw the reasonable inference that Hunter

caused Plaintiffs willful and malicious injury through his libelous statements and the resulting

defamation cause of action.

b.    _Unlawful or Unfair Business Practices_

Although Plaintiffs can plausibly plead a cause of action for unfair business practices

under the UCL, any right to relief from Hunter would not be excepted from discharge. As

described above, Plaintiffs are limited to equitable, injunctive relief on their UCL claim against

Hunter because Hunter did not obtain any funds that would be subject to restitution. Only claims,

as defined in § 101(5) of the Bankruptcy Code can be discharged in bankruptcy, _Sound Rivers,_

_Inc. v. Taylor (In re Taylor)_, 572 B.R. 592, 600 (Bankr. E.D.N.C. 2017), and equitable,

injunctive relief can only become a claim in limited instances in which it gives rise to a payment.

_See Ohio v. Kovacs_, 469 U.S. 274, 284–85 (1985) (allowing the discharge in bankruptcy of an

equitable obligation where the court–appointed receiver was seeking money to clean up a

contaminated site rather than an order that the debtor do so himself). If the aggrieved party

cannot accept money in lieu of an equitable remedy, the equitable remedy is not a claim. _Mark_

_IV Indus., Inc., v. N.M. Env't Dep't (In re Mark IV Indus., Inc.)_, 438 B.R. 460, 465 (Bank.

S.D.N.Y. 2010); _see also In re Taylor_, 572 B.R. at 601. Because Plaintiffs are limited to

equitable relief and do not possess an option to accept money in lieu of that equitable remedy,

they did not possess a "claim" for their potential UCL cause of action that Hunter could

discharge in bankruptcy. While Plaintiffs can take solace in knowing their potential cause of

---

a willful and malicious injury under § 523(a)(6) (Docket No. 39, pp. 12–13). As discussed above, such an argument
is unsupported by Fourth Circuit guidance on the willful and malicious standard of § 523(a)(6). _See TKC Aerospace_
_Inc. v. Muhs (In re Muhs)_, 923 F.3d 377, 379 (4th Cir. 2019). Plaintiffs may continue to plead the broader scienter in
the District Court Complaint. However, such an approach is insufficient to demonstrate a plausible claim for relief
under § 523(a)(6).

action against Hunter based on unfair business practices could survive Hunter's discharge, the UCL cause of action as pleaded would not lead to a "claim" or "debt" under the Bankruptcy Code and, as such, cannot be the basis for a nondischargeability complaint under § 523(a)(6).

c.    *Conspiracy*

Plaintiffs allege that Hunter's actions to further a civil conspiracy were done "willfully [and] with malicious intent" (Docket No. 1, ¶ 112). Plaintiffs argue any damages stemming from, or attached to, the civil conspiracy claim should be excepted from discharge under § 523(a)(6).

To establish any debt arising from Hunter's conspiracy is nondischargeable, Plaintiffs are required to show Hunter himself, rather than solely his coconspirators, acted with intent to cause Plaintiffs injury. On its own, "[p]articipation in a conspiracy is not enough to establish the intentional wrong needed to make a debt nondischargeable." *Kalmanson v. Nofziger (In re Nofziger)*, 361 B.R. 236, 243 (Bankr. M.D. Fla. 2006); *see also Khanm Kim Luc v. Chien (In re Chien)*, No. NC-07-1268, 2008 WL 8240422, at *7 (9th Cir. B.A.P. Jan. 24, 2018) (finding a conspiracy claim on its own does not substitute for the intentional tort typically required to make a debt nondischargeable under § 523(a)(6)); *MT Tech. Enters., LLC v. Nolte (In re Nolte)*, 542 B.R. 185, 195 (Bankr. E.D. Va. 2015) (holding creditors were required to prove at trial whether debtor's liability for business conspiracy was a willful and malicious injury under § 523(a)(6)). To determine whether a debtor's liability for civil conspiracy is a willful and malicious injury subject to nondischargeability under § 523(a)(6), the court looks to a debtor's intent, as a coconspirator, in committing the underlying unlawful act or tort of the conspiracy. *Int'l Bus. Inv., Inc. v. Youngchul Park (In re Youngchul Park)*, Case No. 2:14-ap-01835, 2017 WL 3017087, at *13 (Bankr. C.D. Cal. July 13, 2017) (considering whether the intent for the underlying tort of conversion is identical to willful in determining whether debtor's liability for civil conspiracy to

39

convert is nondischargeable under § 523(a)(6)); *see also Ewers v. Cottingham (In re Cottingham)*, 473 B.R. 703, 709-11 (6th Cir. B.A.P. 2012) (finding co–debtor's liability for wife's embezzlement was nondischargeable under § 523(a)(6) where co–debtor conspired to convert the funds to serve his own purposes); *Haemonetics Corp. v. Dupre (In re Dupre)*, 238 B.R. 224, 230 (D. Mass. 1999) (debtor's liability for husband's embezzlement was nondischargeable under § 523(a)(6) where she knew the excess funds were stolen and wrote checks drawing upon those funds).

Plaintiffs plausibly pleaded two causes of action, in addition to conspiracy, under California law—libel and unfair business practices. Because Plaintiffs' unfair business practices cause of action is limited to equitable, injunctive relief, that cause of action against Hunter may not be the basis of a § 523(a)(6) dischargeability complaint. As such, any civil conspiracy to commit those unfair business practices similarly cannot be found to be nondischargeable.

Plaintiffs also plausibly pleaded defamation, in the form of libel, under California law. But Plaintiffs' defamation claim was not well-pleaded for the purposes of the § 523(a)(6) dischargeability complaint. By allowing for the possibility that Hunter made his statements "recklessly" and in which he "should have" known his statements were false (Docket No. 1, ¶¶ 69, 85), Plaintiffs did not plausibly plead Hunter had an intent to injure O'Gara under § 523(a)(6). As Plaintiffs did not plead a willful and malicious injury for the tort of defamation, their pleading for conspiracy suffers from the same deficiency and is not alleged to be a willful and malicious injury subject to nondischargeability under § 523(a)(6).

## CONCLUSION

For the reasons stated, Plaintiffs have failed to allege sufficient facts, viewed in a light most favorable to Plaintiffs, that allow the Court to draw the reasonable inference that Hunter's

actions constitute a willful and malicious injury under § 523(a)(6). Because Plaintiffs'
dischargeability complaint does not allege "enough facts to state a claim to relief that is plausible
on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), Hunter's motion to dismiss
under Rule 12(b)(6) is granted.

A dismissal with prejudice, however, "is warranted only when the trial court determines
that the allegation of other facts consistent with the challenged pleading could not possibly cure
the deficiency." *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th
Cir. 2009); *see also Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (finding a
plaintiff should have "every opportunity to cure a formal defect in [a] pleading.").

With this guidance in mind, the Court dismisses, with prejudice, only Plaintiffs' claim for
a nondischargeable debt based on an alleged violation of unlawful and unfair business practices.
The Court dismisses Plaintiffs' remaining claims without prejudice and grants Plaintiffs leave to
amend. Plaintiffs must file an amended complaint addressing deficiencies in the remaining
claims no later than twenty-one (21) days from the date of this order, or this adversary
proceeding will be dismissed. Pursuant to Federal Rule of Bankruptcy Procedure 7015, Hunter
shall respond to the amended complaint within 14 days of service.

**END OF DOCUMENT**

PARTIES TO BE SERVED

Todd O'Gara and Wanu Water, Inc. vs Greg Hunter
Adv. Proceeding No. 18-6036

Gregory Bowman Hunter, Sr.
2844 Fairmont Road
Winston-Salem, NC 27106

Todd O'Gara
2042 Armacost Avenue
Los Angeles, CA 90025

Wanu Water, Inc.
c/o Todd O'Gara
2042 Armacost Ave.
Los Angeles, CA 90025

Eric Robert Schaefer
Hedrick Gardner Kincheloe & Garofalo
6000 Fairview Road, Suite 1000
Charlotte, NC 28210

Frederick T. Smith
Seyfarth Shaw LLP
6000 Fairview Road, Suite 1200
Charlotte, NC 28210

William P. Miller
Bankruptcy Administrator
100 S. Edgeworth St.
Greensboro, NC 27401

C. Edwin Allman, III
P.O. Drawer 5129
Winston-Salem, NC 27113-5129

William J. Hanlon
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210